UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROGER FOX,

                            *Plaintiff,*

            v.                                          Case No. 24-CV-7330 (KMK)

LIBERTY MUTUAL FIRE INSURANCE CO.,              ORDER & OPINION

                            *Defendant.*

---

Appearances:

Aaron Morris Schlossberg, Esq.
The Law Office of Aaron M. Schlossberg, Esq., P.L.L.C.
New York, NY
*Counsel for Plaintiff*

Marshall Todd Potashner, Esq.
Glenn Peter Berger, Esq.
Jaffe & Asher LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Roger Fox ("Plaintiff") brings this Action against Liberty Mutual Fire Insurance

Company ("Defendant"), seeking a declaratory judgment that Defendant must provide coverage

of at least $169,000.00 to Plaintiff for damages to a certain piece of real property under an

insurance policy issued by Defendant, as well as actual and consequential damages, costs,

expenses, disbursements, attorneys' fees, and interest.  (Notice of Removal, Ex. A ("Compl."),

10–11 (Dkt. No. 1-1).)[1]  He asserts causes of action for breach of contract, breach of duty of

---

[1] Unless otherwise indicated, the Court cites the page numbers of the Parties' filings as
generated by the Electronic Case Filing system, which appear in the upper right corner of each
document.

good faith and fair dealing, and unjust enrichment.  (*Id.* ¶¶ 26–53.)  This Action was originally filed in Supreme Court of the State of New York for the County of Rockland, (*id.* at 2), but was removed by Defendant to this Court on September 27, 2024, (Notice of Removal (Dkt. No. 1)). Before the Court is Defendant's Motion to Dismiss the Complaint.  (*See* Mot. to Dismiss (Dkt. No. 12); Mem. of Law in Supp. of Mot. to Dismiss ("Def.'s Mem.") (Dkt. No. 12-4).)  For the reasons explained below, Defendant's Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

Since at least 2013, Plaintiff has owned property in Blauvelt, New York ("the Property"). (Compl. ¶ 2.)  He alleges that he "has insured through LMFIC since 2008" and "renewed the same policy on the same terms every year until September 22, 2023" without any changes to that policy.  (*Id.* ¶¶ 5–7.)

Plaintiff says that before March 25, 2022, the Property sustained "damage which also resulted in loss of use of the . . . building" on the premises, as well as "loss of rental value" at that same building; it appears that this damage had to do with the plumbing system at the Property.  (*Id.* ¶¶ 9, 13.)  On March 25, 2022, Plaintiff submitted a claim for coverage to Defendant under insurance policy number FN2-228-292805-7112 (the "Policy") which, he says, adequately covered the amount sought, was in effect, and covered the relevant types of losses. (*Id.* ¶¶ 10–13.)  Plaintiff alleges that on or about "March 25, 2023, Doreen Hannafey Mutum [an employee] of [Defendant] informed [Plaintiff] that [Defendant] would provide Claim benefits to [Plaintiff] pertaining to the damage to the plumbing."  (*Id.* ¶ 14.)

Despite Defendant making a partial payment on the claim, Plaintiff states that Defendant still owes him $169,000.00.  (*Id.* ¶ 15.)  He further alleges that in 2013, he submitted a claim

"based on facts substantially identical to those at issue" here, and that this claim was covered in full in 2015. (*Id.* ¶¶ 16, 18.) Accordingly, he says, Defendant "explicitly recognized its obligations under the Policy to cover loss of use and rental value in connection with that prior claim." (*Id.* ¶ 19.)

According to a copy of the Policy submitted by Defendant, claims under the Policy are subject to a two-year period of limitation. (*See* Mot. to Dismiss, Ex. B, at 27 (Dkt. No. 12-3).)[2] The relevant portion of the Policy provides:

> **J. Suit Against Us**
> No action can be brought against us unless there has been full compliance with all of the terms under this policy and the action is started within two years after the inception of the loss. For the purposes of this condition, inception of the loss means the date on which the direct physical loss or damage occurred.

(*Id.*) This provision is part of a special set of provisions for New York State policies that apply to the dwelling insurance issued to Plaintiff. (*See id.* at 25.)

B. Procedural Background

Plaintiff filed this Action on July 19, 2024, in the Supreme Court of the State of New York, Rockland County. (*See* Compl.) On September 27, 2024, Defendant removed the Action to this Court. (*See* Notice of Removal.) Shortly thereafter, Defendant requested a conference in anticipation of moving to dismiss pursuant to Rule 12(b)(6). (Letter from Marshall T. Potashner, Esq. to Court dated Oct. 1, 2024 (Dkt. No. 5).) The Court held a conference and set a briefing schedule. (*See* Dkt. (Minute Entry for Proceedings held on February 6, 2025).)

Defendant submitted its Motion to Dismiss, Memorandum of Law, and other supporting materials on March 10, 2025. (*See* Mot. to Dismiss; Def.'s Mem.) Plaintiff filed his opposition

---

[2] When citing to the text of the Policy, the Court refers to pages using the page numbers designated by the Court's Electronic Case Filing system.

on April 7, 2026.  (*See* Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") (Dkt. No. 14).)  Defendant replied on April 28, 2025.  (*See* Def.'s Reply Mem. ("Def.'s Reply") (Dkt. No. 17).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

4

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). Additional documents a court may consider at this stage include those "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted). "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* "This generally occurs when the material considered is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not

attached to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks omitted).

There is a limitation to this principle, however. The Court cannot consider a document from beyond the four corners of the complaint if there is a dispute "regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). This is a very strict requirement that can be satisfied by "even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document." *See UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 435 (S.D.N.Y. 2015); *see also Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.*, 2016 WL 4382709, at *7 (S.D.N.Y. 2016) ("[T]he requirement that there be 'no dispute' about the authenticity of documents 'integral' to the complaint 'has been interpreted strictly[.]'").

B. Analysis

    1. Breach of Contract — Statute of Limitations

Defendant's lead argument is that the copy of the Policy it produced is properly before the Court, and that the Court must enforce the Policy's limitations period and dismiss the Action. Ordinarily, the Court could consider the text of the Policy produced by Defendant. The Policy is quoted directly in Plaintiff's briefing, (*see* Compl. ¶ 20), and Plaintiff's claims rest heavily upon its terms and effects, (*see, e.g.*, *id.* at ¶¶ 28–30 (cause of action based on the purported terms of the Policy)). Indeed, the Policy is precisely the type of external material that is properly considered at the Motion to Dismiss stage. It is both cited in Plaintiff's Complaint and it is a "contract . . . containing obligations upon which . . . [P]laintiff's complaint stands or falls," the document would, in the typical course, be properly considered on a Motion to Dismiss. *Nicosia*, 834 F.3d at 231; *see also, e.g.*, *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-

3350, 2021 WL 1034259, at *3 (S.D.N.Y. Mar. 18, 2021) ("In insurance disputes in particular, courts may consider the insurance policies themselves, even if they are not attached to the plaintiff's complaint."), *report and recommendation adopted*, 2022 WL 558145 (S.D.N.Y. Feb. 24, 2022).

However, Plaintiff has raised an objection to the authenticity or accuracy of the document. Plaintiff asserts that the "copy of [the] purported insurance 'policy'" submitted by Defendant cannot be considered by this Court because it is "unverified and unauthenticated." (Pl.'s Mem. in Opp'n 6.) Defendant's sole rejoinder is that "Plaintiff does not actually raise an issue regarding the authenticity or accuracy of the document submitted to the Court." (Def.'s Reply 7.) But Defendant cites no cases where a court, faced with a challenge to the authenticity of a policy, concluded that it could nevertheless consider an insurance policy. (*See id.* (citing *Delaney v. HC2, Inc.*, 761 F. Supp.3d 641, 661 (S.D.N.Y. 2025); *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 354 (S.D.N.Y. 2015)).) Mindful of the principle that "even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible," *Mbody*, 2016 WL 4382709, at *7 (quotation marks and citations omitted), the Court will not consider the Plan on this Motion to Dismiss. *See Savides v. United Healthcare Servs., Inc.*, No. 18-CV-4621, 2019 WL 1173008, at *2 (S.D.N.Y. Mar. 13, 2019) (concluding that, although a plan was "relevant and integral to the Complaint," upon Plaintiff's objection to its "accuracy and authenticity" the Court would not consider the document, and accordingly denying a motion to dismiss); *Mbody*, 2016 WL 4382709, at *7 (same); *Nicosia*, 834 F.3d at 231 ("If . . . there is a dispute as to the relevance, authenticity, or accuracy of the documents relied upon, the district court may not dismiss the complaint with

those materials in mind.").  Accordingly, Defendant's lead argument that Plaintiff's claims are time-barred based on the terms of the Policy cannot be considered at this juncture.

The Court notes, however, that if the copy of the Policy proves to be accurate, Defendant's time-barring arguments appear well-founded.  *See, e.g.*, *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013) ("In the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." (alteration adopted, quotation marks and citation omitted)); *see also* N.Y. C.P.L.R. § 201 (providing, under state law, that "a shorter time" to commence an action than that provided by state law may be adopted, so long as it "is prescribed by written agreement"); *J Constr. Co., LLC v. Westchester Fire Ins. Co.*, 87 N.Y.S.3d 585, 587 (App. Div. 2018) ("Parties to a contract may agree to limit the period of time within which an action must be commenced to a period shorter than that provided by the applicable statute of limitations.").  Nevertheless, faced with the strict requirements involving objections to the authenticity of a document at the Motion to Dismiss stage, the Court does not reach this issue for now.  Plaintiff is advised that even if "implicit" and "conclusory" disputes suffice to prevent the Court from considering a document at the Motion to Dismiss stage, disputes of that nature may not be sufficient to defeat a summary judgment motion or otherwise prevail in this Action.[3]

---

[3] In Plaintiff's opposition, his counsel made representations—omitted from the Complaint—that are meant to support defenses to time-barring based on waiver or estoppel. Plaintiff allegedly "retained the undersigned counsel who attempted to negotiate the claim with [Defendant].  [Defendant] sent an email to plaintiff's counsel on March 27, 2024[,] . . . inviting him to bring suit thereafter, writing '. . . if you feel differently please send us the [law]suit[.]' [Defendant] does not dispute sending the 3/27/24 Email."  (Pl.'s Opp'n 8 (fourth-to-last alteration in original).)  Defendant does not contest that this communication occurred but asserts

### 2. Remaining Claims

Because the sole basis for Defendant's Motion to Dismiss Plaintiff's claim for breach of

contract is time barring, that claim survives the Motion.  As to Plaintiff's claims for unjust

enrichment and breach of the implied covenant of good faith and fair dealing, however,

Defendant raises additional objections to the viability of these.  (Def.'s Mem. 17–18, 21–23.)  It

also claims that Plaintiff is not entitled to consequential damages, declaratory judgment, or

attorneys' fees.  (Def.'s Mem. 18–21, 23–25.)  The Court considers each of these arguments in

turn.

### a. Breach of Covenant of Good Faith and Fair Dealing

"New York law . . . does not recognize a separate cause of action for breach of

the implied covenant of good faith and fair dealing when a breach of contract claim, based upon

the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

"Accordingly, 'raising both claims in a single complaint is redundant, and courts confronted with

such complaints under New York law regularly dismiss any freestanding claim for breach of the

covenant of fair dealing.'" *Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d

374, 388 (S.D.N.Y. 2023) (quoting *Trahan v. Lazar*, 457 F. Supp. 3d 323, 358 (S.D.N.Y. 2020)).

The claim may survive a motion to dismiss, however, where the claim is "based on allegations

---

that the correspondence occurred on March 27, 2024—more than two years after the damage to the Property.  (Reply 11.)

Given that the Court cannot, at this juncture, consider the time-barring argument, the Court also does not address Plaintiff's arguments as to waiver and estoppel, (*see* Pl.'s Opp'n 12–17), except to remind Plaintiff's counsel that a plaintiff may not "attempt to defeat [a motion to dismiss] by asserting new facts through counsel for the first time in his opposition." *Bond v. City of N.Y.*, No. 14-CV-2431, 2015 WL 5719706, at *5 (E.D.N.Y. Sept. 28, 2015); *see also Jimenez v. City of New Rochelle*, No. 19-CV-2525, 2021 WL 1178090, at *6 (S.D.N.Y. Mar. 29, 2021) ("[T]hese new facts are improperly alleged for the first time in opposition papers and will not be considered." (quotation marks and citation omitted)).

different from those underlying the accompanying breach of contract claim." *Id.* (quoting

*Trahan*, 457 F. Supp. 3d at 358); *see also* Evan D. Gestwick & Brian D. Barnas, *Dismissed As*

*Duplicative: Claims for Breach of Insurance Contract and the Implied Covenant of Good Faith*

*and Fair Dealing*, 52 Am. Bar Ass'n Brief 38, 39 (Winter 2023) ("For many years and across

many jurisdictions, the general rule has been this: to survive a motion to dismiss, a cause of

action for breach of the implied covenant of good faith and fair dealing, when part of the same

civil action as a cause of action for breach of contract, must be based on separate and distinct

facts from the breach of contract claim.").[4]

Defendant claims that the breach of the covenant of good faith and fair dealing claim is

wholly duplicative of the breach of contract claim and therefore must be dismissed.  (Def.'s

Mem. at 8.)  In the Complaint, Plaintiff alleges that Defendant "breached its duties of good faith

and fair dealing by, among other things, refusing to provide the full coverage requested by

[P]laintiff, failing to properly and fully investigate the subject Claim[,] and erroneously . . .

asserting that it cannot view the prior claim which it covered, and failing to issue any timely or

proper disclaimer of coverage." (Compl. ¶ 40.)   Plaintiff further alleges that Defendant "grossly

disregarded its obligations under the Policy" and exhibited "deliberate and reckless indifference"

to Plaintiff's interests under the Policy.  (*Id.* ¶¶ 42–43.)

---

[4] As described further in Section II.B.2.c, *infra*, allegations that a defendant breached the
implied covenant of good faith and fair dealing can support a claim for additional *damages*
resulting from a breach of contract claim, but cannot be pled as a duplicative cause of action. *See*
*Scheuer ex rel. John W Scheuer 2000 Tr. v. United States Liab. Ins. Co.*, No. 22-CV-09474, 2023
WL 4275114, at *3 (S.D.N.Y. June 27, 2023) ("Pleading both [claims] is problematic when a
party seeks to raise duplicative causes of action under both breach of contract and breach of the
implied covenant of good faith and fair dealing and seek separate damages on both claims."); *id.*
(concluding that allegation that defendant breached duty of good faith should not be dismissed
where "[p]laintiffs [did] not assert a second and separate cause of action for breach of the
implied duty of good faith and fair dealing").

The Court can discern no allegations in Plaintiff's Complaint to support a breach of the duty of good faith and fair dealing that are separate and apart from the allegations underlying his breach of contract claim. Allegations "that [D]efendant violated its duty of good faith and fair dealing [that] are predicated solely upon the claim that [D]efendant failed or refused to pay the full amount of [owed] coverage under the insurance policy, i.e., that [D]efendant had breached the terms of the policy," are appropriately dismissed on a Rule 12(b)(6) motion. *Brown v. Erie Ins. Co.*, 172 N.Y.S.3d 299, 302 (App. Div. 2022); *see also EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 94 (S.D.N.Y. 2018) (dismissing breach of implied covenant of good faith and fair dealing claim where "the damages [the p]laintiffs seek as a result of [the defendant's] alleged failure to turn over documents [are] identical to the damages they seek for the alleged breach of contract."). (*See* Compl. ¶ 36 (seeking $169,000.00 in direct damages stemming from asserted breach of contract); *id.* ¶ 45 (seeking same stemming from asserted breach of covenant of good faith and fair dealing).)[5] Thus, this claim is dismissed.

### b. Unjust Enrichment

A claim for unjust enrichment requires allegations "(1) that the other party was enriched, (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit [the

---

[5] The cases cited by Plaintiff, (Pl.'s Opp'n 19, 21), are not to the contrary. *See Funk v. Allstate Ins. Co.*, No. 13-CV-5933, 2013 WL 6537031, at *4 (E.D.N.Y. Dec. 13, 2013) ("Since Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and breach of contract rest upon the same alleged conduct by Defendant, the breach of the implied covenant of good faith and fair dealing cause of action is sua sponte DISMISSED as redundant."); *Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876, 2011 WL 743568, at *4 (E.D.N.Y. Feb. 24, 2011) ("New York generally does not recognize a damages claim for bad faith denial of coverage because such claims would be duplicative of a claim sounding in breach of contract."); *Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 278 (App. Div. 2001) ("We are unwilling to adopt the widely accepted tort cause of action for 'bad faith' in the context of a first-party claim, because we recognize that to do so would constitute an extreme change in the law of this State.").

other party] to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (alteration adopted, citation and quotation marks omitted). Even where these elements have been alleged, a "cause of action for unjust enrichment cannot be maintained where there is a written agreement governing the subject matter at issue." *111 W. 57th Inv. LLC v. 111 W57 Mezz Inv. LLC*, 198 N.Y.S.3d 521, 524 (App. Div. 2023); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). At the motion to dismiss stage, the primary question under New York law appears to be whether the "assertions raised in [a party's] unjust enrichment claim echo those set forth in its breach of contract claims." *Nyahsa Servs., Inc. v. Recco Home Care Servs., Inc.*, 36 N.Y.S.3d 270, 275 (App. Div. 2016); *see also In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d 414, 427 (S.D.N.Y. 2019) ("Relief for unjust enrichment is 'available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.' Accordingly, 'an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" (alteration adopted, citation omitted) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).

Defendant relies on the principle that where there is an express contract between the Parties that governs the subject matter, a plaintiff cannot assert a claim premised on a theory of unjust enrichment. (Def.'s Mem. at 7–8.) It further contends that the unjust enrichment claim, like the claim for breach of the covenant of good faith and fair dealing, is "entirely duplicative of, and factually indistinguishable from, [Plaintiff's] breach of contract claim." (*Id.* at 8.)

12

Plaintiff, in opposition, contends that the unjust enrichment claim "goes above and beyond the actual premium payments made by the [P]laintiff" and therefore "is not duplicative of any other claims." (Pl's Opp'n 20.)

Plaintiff's assertions notwithstanding, the allegations in the Complaint do not identify any harm separate from the alleged breach of contract. (*See* Compl. ¶¶ 48–49, 52–53 ("By accepting payments of the Policy premiums from Mr. Fox and subsequently wrongfully denying coverage under the Policy, LMFIC has improperly reaped . . . significant and immense benefits," that these benefits "came at the expense of the [P]laintiff," and that Plaintiff was harmed as a result of this conduct).) Rather, Plaintiff's allegations are that he paid the requested premiums under the terms of the Policy, but that Defendant improperly refused to provide him the benefits of that Policy; they do not involve a challenge to the enforceability of that policy or provide an alternative basis for the unjust enrichment claim. (*See id.*) Under New York law, this claim must therefore be dismissed, because Plaintiff "cannot state a claim for unjust enrichment based on the payment of contractually owed . . . fees." *In re Platinum-Beechwood Litig.*, 377 F. Supp. 3d at 427; *see also Corsello*, 967 N.E.2d at 1185 (dismissing duplicative breach of contract claim on basis that, "[t]o the extent that [plaintiff's other] claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects.").[6]

---

[6] The cases cited by Plaintiff in his opposition do not compel the contrary conclusion, (Pl.'s Opp'n 18–20); rather, they involved claims where the enforceability of the contract was at issue, or, indeed, do not involve unjust enrichment claims at all. *See, e.g.*, *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010) (permitting unjust enrichment claim to survive when faced with "threshold question" of whether "an enforceable contract exists that governs the subject matter underlying the unjust enrichment claim"); *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279 (E.D.N.Y. 2002) (permitting a *fraud* claim to proceed as non-duplicative under fraud-specific precedent); *Beninati v. F.D.I.C.*, 55 F. Supp. 2d 141, 146–47 (E.D.N.Y. 1999) (evaluating whether claim breach of implied duty of good faith against the

c. Consequential Damages

Under New York State law, a party may obtain consequential damages for "those risks foreseen or which should have been foreseen at the time the contract was made." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 886 N.E.2d 127, 130 (N.Y. 2008) (quotation marks and citations omitted); *accord Zicherman v. State Farm Fire & Cas. Co.*, 698 F. Supp. 3d 564, 569 (E.D.N.Y. 2023) (same). Similarly, although there exists no separate cause of action for bad faith conduct in the denial of coverage under an insurance policy, "consequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context, so long as the damages were 'within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting.'" *Panasia Estates, Inc. v. Hudson Ins. Co.*, 886 N.E.2d 135, 137 (N.Y. 2008) (quoting *Bi-Econ.*, 886 N.E.2d at 130); *see also Margules v. Massachusetts Mut. Life Ins. Co.*, No. 23-CV-02584, 2025 WL 2549914, at *15 (E.D.N.Y. Sept. 3, 2025) (describing bad faith as "a means by which plaintiffs can obtain punitive damages in a breach of contract action, by establishing that the defendant's conduct in breaching the contract was so egregious as to violate a duty to the plaintiff that exists independently of the contract" (quoting *Binder v. Nat'l Life of Vermont*, No. 02-CV-06411, 2003 WL 21180417, at *4 (S.D.N.Y. May 20, 2003)).

Under this line of cases, consequential damages have been granted in insurance cases involving real property, and courts have denied motions to dismiss seeking to foreclose the possibility that plaintiffs might recover those damages. *See, e.g., Zicherman*, 698 F. Supp. 3d at 570 ("As a primary residence, the [plaintiffs'] home was not a purely economic asset. An

FDIC premised on loan agreement was cognizable, and characterizing that claim as one for "breach of the underlying contract" (quotation marks omitted)).

insurance payment in full that is late will still fully make whole a loss in value in the home, but it will cause damage to the homeowners' ability to live in their home.  Because the delay in processing the claim caused an injury that should have been foreseeable at the time of contracting for insurance for a residence, [the defendant's] motion to dismiss the [plaintiffs'] claim for consequential damages is DENIED.").

However, to receive consequential damages, a Plaintiff must allege facts sufficient to establish an entitlement to consequential damages arising out of a breach of contract claim: "that (1) such consequential damages were a natural and probable consequence of the breach of contract, (2) were or should have been foreseeable, and (3) were reasonably contemplated by the contracting parties at the time the policy was issued." *Roman Cath. Diocese of Rockville Ctr. v. Gen. Reinsurance Corp.*, No. 16-CV-02063, 2016 WL 5793996, at *4 (S.D.N.Y. Sept. 23, 2016) (citing *Bi-Econ.*, 886 N.E.2d at 130); *accord Island Ordnance Sys., LLC v. Amerimex, Inc.*, 205 N.Y.S.3d 456, 458 (App. Div. 2024) (same); *Scheuer ex rel. John W Scheuer 2000 Tr.*, 2023 WL 4275114, at *3 (same); *Scottsdale Ins. Co. v. McGrath*, 549 F. Supp. 3d 334, 352 (S.D.N.Y. 2021) (explaining that plaintiffs must "specif[y] the type[ ] of consequential damages claimed and alleg[e] that such damages were reasonably contemplated by the parties prior to contracting"); *Island Ordnance Sys.,* 205 N.Y.S.3d at 458 ("A pleading party is required to allege that the damages were foreseeable and within the contemplation of the parties at the time the contract was made.").

Defendant contends that Plaintiff has failed to allege or otherwise identify any alleged damages distinct from his breach of contract damages, and further has failed to satisfy the requirement that he plead with specificity consequential damages.  (Def.'s Reply 16.)  However, the Court notes recent case law suggesting that under New York law, "there is no heightened

15

pleading standard requiring plaintiff to explain or describe how and why the 'specific' categories of consequential damages alleged were reasonable and foreseeable at the time of contract," and indeed "there is no heightened pleading requirement for consequential damages" at all. *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 92 N.Y.S.3d 231, 233 (App. Div. 2019).[7] Rather, as described, the Plaintiff's allegations must support the conclusion that consequential damages were a natural consequence of the breach, they were or should have been foreseeable, and they were reasonably contemplated by the contracting parties at the time the policy was issued.

Plaintiff alleges that, when his property was damaged, the damages "resulted in loss of use of the premises building and loss of rental value at the premises building." (Compl. ¶ 9.) He claims that Defendant "in bad faith failed to properly and fully investigate the subject Claim" and "any purported disclaimer" issued by the company "followed a prolonged delay." (*Id.* ¶¶ 24–25.) Plaintiff further alleges that by refusing to provide the full coverage he has requested, Defendant has caused him damages in the form of "loss of use of the premises building" and

---

[7] The Court also notes that several of the cases upon which Defendant relies do not discuss consequential damages, or pre-date the New York Court of Appeals' 2008 decision in *Bi-Economy*, a decision that commentators have described as a "a sea change in first-party insurance coverage law in New York." Jay M. Levin & Lisa A. Szymanski, *Consequential Damages Resulting from an Insurer's Breach of Contract*, Brief, Summer 2012, at 46. (*See* Reply. 16.) *See Ebrahimian v. Nationwide Mut. Fire Ins. Co.*, 960 F. Supp. 2d 405, 417–18 (E.D.N.Y. 2013) (describing requirements for special and punitive damages in contract cases, and specifically recognizing that "extra contractual consequential damages" would be recoverable in some circumstances); *Bibeault v. Advanced Health Corp.*, No. 97-CV-6026, 2002 WL 24305, at *6 (S.D.N.Y. Jan. 8, 2002) (discussing the requirements for "special damages" in *dicta*, where the plaintiff "ha[d] not plead special damages, but instead s[ought] the equitable remedy of recission" and analyzing the availability of that relief under New York's *Bridgestone* rule).

"loss of rental value" at the building, as well as "out of pocket costs and expenses." (*Id.* ¶¶ 34–35; *see also* ¶¶ 44–45.)  So, he claims, he is entitled to "consequential damages." (*Id.* ¶¶ 36, 45.)

These allegations are not sufficient to meet Plaintiff's pleading standard under New York law.  Although Plaintiff requests consequential damages, it is wholly unclear what harms, if any, are the basis for the consequential damages sought.  *Compare Dahlinger v. First Am. Specialty Ins. Co.*, No. 19-CV-20, 2020 WL 1511261, at *4 (N.D.N.Y. Mar. 30, 2020) (determining that the plaintiff's allegations that the insurer "did not adequately investigate the entire scope of damages" and disregarded the plaintiff's information over the "incorrect and flawed opinions of its adjusters," amounted to "wholly conclusory" "bare bones allegations" that were properly subject to a motion to dismiss), *with Zicherman*, 698 F. Supp. 3d at 569 (finding bad faith adequately pleaded where the complaint alleged specific details to demonstrate that the delayed payments contributed to the insurer's "undue pressure" in forcing the insured to settle a claim, including that the insurer first delayed processing the claim for months, gave an initial low-ball offer, stopped negotiating and required a new builder to start over on rebuilding three months after the plaintiff submitted the claim, and later reneged on an advance); *see also King v. Liberty Mut. Ins. Co.*, No. 25-CV-00345, 2025 WL 1677074, at *4 (N.D.N.Y. June 13, 2025) ("[The p]laintiff does not specify what consequential damages he suffered, besides 'attorney's fees and other costs and disbursements.'  Therefore, under New York law, to a legal certainty, [the p]laintiff cannot recover under a claim for bad faith denial of coverage, as pleaded." (citation omitted)); *Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 173 (E.D.N.Y. 2014) (concluding pleading adequate where the plaintiff alleged that business income was lost as a result of the failure to pay an insurance claim); *Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, No. 13-CV-2291, 2014 WL 28600, at *11 (S.D.N.Y. Jan. 2, 2014) (granting summary judgment

17

to defendant on consequential damages issue on the basis that the plaintiffs did not plead "that they suffered any damages as a consequence of the alleged bad faith refusal to pay their claim other than the costs associated with bringing a legal action to enforce their claim"), *aff'd,* 581 F. App'x 49 (2d Cir. 2014) (summary order).  The "loss of rental value," for instance, might be covered under the provision of the Policy alleged to encompass the "Fair Rental Value" of the ensured premises, (Compl. ¶ 20), or it might form the basis of a separate request for consequential damages stemming from additional delays in providing coverage, *cf. Zicherman*, 698 F. Supp. 3d at 570 (E.D.N.Y. 2023) (permitting consequential damages to proceed given that the "the delay in processing the claim caused an injury that should have been foreseeable at the time of contracting").[8]

Accordingly, Plaintiff's request for consequential damages is dismissed.

### d. Attorneys' Fees

Under New York law, the general rule is that an insured party "may not recover attorneys' fees that occur as a result of an affirmative action against an insurer to establish the insurer's rights and obligations under the policy." *Zicherman*, 698 F. Supp. 3d at 570 (citing

---

[8] The Complaint would also need to have included allegations that whatever consequential damages Plaintiff sought were foreseeable to Defendant.  *See Garnes v. Hartford Ins. Co.*, No. 22-CV-3406, 2024 WL 4250268, at *4–5 (E.D.N.Y. July 23, 2024) (recommending the denial of consequential damages for lost income, where the plaintiff did not allege that he informed the defendant that he intended to purchase the insured car for employment purposes), *report and recommendation adopted*, 2024 WL 4297655 (E.D.N.Y. Sept. 26, 2024); *Sikarevich Fam. L.P.*, 30 F. Supp. 3d at 173 (finding foreseeability sufficiently alleged where the plaintiff asserted that "damages sustained by plaintiff as a result of [the defendant's] wrongful conduct were within contemplation of the parties . . . as the natural probable result of a breach of [the defendant's] duties at the time of or prior to the parties renewing the Policy" (quotation marks omitted)).  Given that the Complaint does not specify the nature of the consequential damages, the Court cannot discern any allegations that support the conclusion that those damages were foreseeable to Defendant.

*New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763 (N.Y. 1995)). Nevertheless, it appears that there is some confusion as to whether, under recent New York state precedent, parties can recover attorneys' fees and costs incurred in affirmative litigation against their insurers. This confusion originates with two New York Court of Appeals decisions: *Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York*, and *Panasia Estates, Inc. v. Hudson Insurance Company*. *Bi-Economy* established that a party liable for breach of contract may be responsible for consequential damages that were "reasonably contemplated by the parties" at the time of contracting where there has been a breach of the implied covenant of good faith and fair dealing. *Bi-Econ.*, 886 N.E.2d at 130; *see also* 28A N.Y. Prac., Contract Law § 22:22, *Consequential damages* (2025) ("In order to impose upon a party damages beyond those that are a natural and probable consequence of the breach, such unusual or extraordinary damages must have been within the contemplation of the parties at the time of, or prior to, contracting." (citing *Bi-Econ.*, 886 N.E.2d at 127))). *Panasia Estates* likewise explained that a claim for "specific [consequential] damages sought" as a result of breach of the covenant of good faith and fair dealing should not be dismissed at summary judgment where "the record . . . is not fully developed on [the] issue" whether they were within the contemplation of the parties as the probable result of breach. *Panasia Estates*, 886 N.E.2d at 137.

In the aftermath of *Panasia* and *Bi-Economy*, courts have been divided as to whether the rule announced in those cases extends to attorneys' fees. *See, e.g.*, *1555 Jefferson Rd. LLC v. Travelers Prop. Cas. Co. of Am.*, 733 F. Supp. 3d 164, 169 (W.D.N.Y. 2024) ("After *Panasia* and *Bi-Economy*, however, courts in New York have split as to whether a plaintiff can seek attorneys' fees as part of its consequential damages claim." (quotation marks and citation omitted)); *Quick Response Com. Div., LLC v. Cincinnati Ins. Co.*, No. 14-CV-779, 2018 WL

19

2209203, at *2 (N.D.N.Y. May 14, 2018) ("In the face of this tension, courts have decided that *Panasia*'s holding yields to the general rule, and attorney's fees cannot be recovered as consequential damages."); *Koffler v. Cincinnati Ins. Co.*, 239 N.Y.S.3d 54, 58 (App. Div. 2025) ("[A]ttorney's fees are not recoverable against the defendant in an action such as this by an insured to recover the expenses he incurred in bringing this action to settle the parties' rights under the policy."). Those courts that have held that attorneys' fees are not recoverable have adhered to "the common-law rule that, absent a contractual or policy provision permitting the recovery of an attorney's fee," an insured party may not recover the expenses of litigating against an insurer to settle its rights. *Stein, LLC v. Laws. Title Ins. Corp.*, 953 N.Y.S.2d 303, 304 (App. Div. 2012). On the other hand, some courts (primarily federal courts) have reasoned that the question whether attorneys' fees were available should not be decided at the pleading stage. *H&H Env'tl Sys., Inc. v. Evanston Ins. Co.*, No. 18-CV-6315, 2019 WL 1129434, at *11 (W.D.N.Y. Mar. 12, 2019) (permitting request for attorneys' fees to survive defendant insurance companies' Rule 12 motions*), abrogated on other grounds by Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85 (2d Cir. 2023).

In the wake of these competing viewpoints, this Court is "persuaded that, even after *Panasia* and *Bi-Economy*, an insured generally cannot recover attorneys' fees and costs incurred in affirmative litigation against the insurer as consequential damages" *unless* an exception to that general rule applies. *1555 Jefferson Rd. LLC*, 733 F. Supp. 3d at 169; *see also Zicherman*, 698 F. Supp. 3d at 570. New York State courts, which are the definitive interpreters of state law, have repeatedly held that "nothing in *Bi-Economy* or *Panasia* implicitly altered or abrogated previous rules limiting recovery of damages for breach of a contract-related duty," but instead those cases "announced a new rule that extended the ability to recover consequential

damages for breach of the covenant of good faith and fair dealing in the context of an insurance contract—a circumstance where they had not previously been available—subject to the same rules that otherwise limit recovery of damages for any breach of contract." *Brown v. Gov't Emps. Ins. Co.*, 66 N.Y.S.3d 733, 737 (App. Div. 2017); *see also Koffler*, 239 N.Y.S.3d at 58 (concluding attorneys' fees were "not recoverable" where action was brought "by an insured to recover . . . expenses . . . incurred in bringing . . . action to settle the parties' rights under the policy"); *Pandarakalam v. Liberty Mut. Ins. Co.*, 29 N.Y.S.3d 413, 415 (App. Div. 2016) (concluding attorneys' fees were not recoverable and collecting cases).

However, even in the aftermath of *Bi-Economy* and *Panasia Estates*, state courts continue to recognize an exception to the general rule exists where there is "no arguable basis to challenge" the insured party's claim and the plaintiff "can further show that no reasonable carrier would, under the given facts, challenge the claim." *Zicherman*, 698 F. Supp. 3d at 570; *see also 1555 Jefferson Rd. LLC*, 733 F. Supp. 3d at 169 (collecting cases applying the exception, and explaining that it requires allegations of (1) gross negligence leading to the insurer's denial, and (2) the absence of "even an arguable basis" for the denial (quotation marks omitted)); *Hershfeld v. JM Woodworth Risk Retention Grp., Inc.*, 181 N.Y.S.3d 667, 669 (App. Div. 2023) (explaining an insured "cast in a defensive posture by the legal steps an insurer takes . . . to free itself from its policy obligations," who also "prevails on the merits" may "recover attorneys' fees incurred in defending against the insurer's action" (quotation marks and citations omitted)); *Creative Glassware Indus. Co. v. Lifestyle Int'l LLC*, No. 22-CV-4074, 2022 WL 17261047, at *5 (S.D.N.Y. Nov. 29, 2022) (noting existence of bad faith exception, but recommending no fees be awarded due to absence of bad faith behavior during litigation), *report and recommendation adopted as modified*, No. 22-CV-4074, 2022 WL 18858925 (S.D.N.Y. Dec. 14, 2022); *Gauthier*

*v. Countryway Ins. Co.*, 953 N.Y.S.2d 346, 348–49 (App. Div. 2012) (noting that "fact questions" precluding summary judgment existed regarding availability of consequential damages, including "counsel fees" where parties submitted dueling affidavits on the issue of bad faith).

Although Plaintiff alleges that Defendant denied his claim in "bad faith" and appears to take the position that no reasonable carrier would have denied his claim on the facts alleged, the references to bad faith in the Complaint are conclusory. (*See* Compl. ¶¶ 24, 41, 42.) Plaintiff does not include any specific facts that would support the conclusion that Defendant acted "in bad faith, vexatiously, wantonly or for oppressive reasons," *U.S. ex rel. Nat. Dev. & Const. Corp. v. U.S. Env't Universal Servs., Inc.*, No. 11-CV-730, 2014 WL 4652712, at *8 (S.D.N.Y. Sept. 2, 2014), nor does he allege facts that would support the conclusion that "no reasonable carrier would, under the given facts, challenge the claim," *Zicherman*, 698 F. Supp. 3d at 570. The Court further notes that the "appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the litigation." *U.S. ex rel. Nat. Dev. & Const. Corp.*, 2014 WL 4652712, at *8 (quotation marks and citation omitted). At this juncture, there are no specific allegations that Defendant has engaged in bad faith during the course of this litigation or acted to prevent Plaintiff from filing his case.

Therefore, Plaintiff's request for attorneys' fees is dismissed.

e. Declaratory Judgment

Defendant argues that Plaintiff is not entitled to declaratory relief. (Def.'s Mem. 25.) The Court agrees. "Courts reject declaratory judgment claims when other claims in the suit will resolve the same issues, because, under such circumstances, a declaratory judgment will not

22

serve any useful purpose." *Optanix, Inc. v. Alorica Inc.*, No. 20-CV-09660, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (quotation marks and citation omitted); *Ness Techs. S.A.R.L. v. Pactera Tech. Int'l Ltd.*, 105 N.Y.S.3d 412, 413 (App. Div. 2019) ("[S]ince plaintiff has a legal remedy for breach of contract, its cause of action for declaratory judgment should have been dismissed."). Here, the request for a declaratory judgment seeks the same relief as Plaintiff's other asserted causes of action, including his breach of contract claim, and Plaintiff has identified no uncertainty in the Parties' legal relationship that would be resolved by a declaratory judgment. *Optanix, Inc.*, 2021 WL 2810060, at *4 (dismissing request for declaratory judgment that "essentially replicate[d] the issues that [would] be resolved by a determination on [the] breach of contract claim" and would "serve no purpose"). (*See* Compl. at 10.) In these circumstances, dismissal of a declaratory judgment request is appropriate. *See CVS Albany, LLC v. 1688 Rojav Realty, LLC*, No. 24-CV-07145, 2025 WL 2614077, at *4 (S.D.N.Y. Sept. 10, 2025) ("[T]he declaratory judgment [the plaintiff] seeks would serve neither of the two relevant objectives of declaratory relief: (1) the claim for declaratory judgment essentially replicates the issues that will be resolved by a determination on [the plaintiff's] breach of contract claim, and (2) [the plaintiff] articulates no uncertainty in the parties' legal relationship that a declaratory judgment would help clarify and that would otherwise remain unresolved as part of the breach of contract claim.").

Plaintiff's request for declaratory relief is therefore dismissed.

### III. Conclusion

For the foregoing reasons, the Motion is granted in part and denied in part. Plaintiff's claims for unjust enrichment, breach of the covenant of good faith, attorneys' fees, consequential damages, and declaratory judgment are dismissed without prejudice. The Court's dismissal of

these claims is without prejudice because this is the first adjudication of Plaintiff's claim on the merits. If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within thirty days of the date of this Opinion & Order. *See Tyson v. Town of Ramapo*, No. 17- CV-4990, 2019 WL 1331913, at *19 (S.D.N.Y. Mar. 25, 2019) ("The Court will afford Plaintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, he still believes that he can plausibly state claims against Defendants." (alteration adopted) (citation omitted)). There will be no extensions. Plaintiff is further advised that an amended complaint will completely replace, not supplement, the now-dismissed Complaint. Any amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to timely file an amended complaint, the dismissed claims may be dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. No. 12.

SO ORDERED.

Dated:    March 30, 2026
          White Plains, New York

KENNETH M. KARAS
United States District Judge

24